IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ROSA FITZHUGH, | : | MOTION TO VACATE |
| Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:18-CR-0242-AT-LTW |
| | : | |
| UNITED SATES OF AMERICA, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:20-CV-0520-AT-LTW |

# FINAL REPORT AND RECOMMENDATION

This matter has been submitted to the undersigned Magistrate Judge for consideration of Rosa Fitzhugh's *pro se* motion under 28 U.S.C. § 2255 (Doc. 48) and the government's response thereto (Doc. 56). For the reasons that follow, the undersigned **RECOMMENDS** that Fitzhugh's § 2255 motion [48] be **DENIED**.

## I.   Procedural History

A federal grand jury in the Northern District of Georgia returned an eleven-count indictment against Fitzhugh charging her in Counts One through Eight with health care fraud, in violation of 18 U.S.C. § 1347, and in Counts Nine through Eleven with aggravated identity theft, in violation of 18 U.S.C. § 1028A. (Doc. 1.) Fitzhugh, represented by retained counsel Ashutosh S. Joshi and Michael John Trost, pled guilty to Count One pursuant to a negotiated plea agreement in which

the government agreed to dismiss the remaining counts. (Doc. 30-1.) The plea agreement included the following provision regarding the immigration consequences of Fitzhugh's guilty plea:

> [Fitzhugh] recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which [Fitzhugh] is pleading guilty. **Indeed, because [Fitzhugh] is pleading guilty to this offense, removal is presumptively mandatory.** Removal and other immigration consequences are the subject of a separate proceeding, however, and [Fitzhugh] understands that no one, including her attorney or the District Court, can predict to a certainty the effect of her conviction on her immigration status. **[Fitzhugh] nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is her automatic removal from the United States.**

(*Id.* at 3-4 (emphasis added).) Fitzhugh signed the plea agreement and a separate certification section, which stated, in relevant part:

> I have read the foregoing Plea Agreement and have carefully reviewed every part of it with my attorney. I understand the terms and conditions contained in the Plea Agreement, and I voluntarily agree to them.

(*Id.* at 12-13.)

At the plea hearing, the Court explained to Fitzhugh the rights she was giving up in pleading guilty, and Fitzhugh stated that she understood. (Doc. 46 at 4-7.) The government then stated the elements of Count One, and Fitzhugh confirmed

2

that she understood the charge. (*Id.* at 7-8.) The government summarized what the evidence would show if the case went to trial, i.e., that Fitzhugh, who was a licensed professional counselor, solicited and hired other licensed professional counselors to work as independent contractors and supervise staff at companies associated with Fitzhugh without disclosing that Fitzhugh had been terminated from Medicaid programs and could no longer bill Medicaid for psychotherapy services. (*Id.* at 8-11.) Then, either the counselors themselves or Fitzhugh's companies would bill Medicaid for services provided by Fitzhugh's staff to Medicaid beneficiaries. (*Id.* at 11.) Those counselors did not provide the psychotherapy services directly but merely supervised the staff who provided those services, and "the way things were billed was not reflective of the services that were provided." (*Id.* at 11-13.) Fitzhugh agreed with this summary. (*Id.* at 13.)

Fitzhugh faced a possible maximum sentence of ten years of imprisonment, and Fitzhugh understood that it was solely up to the Court what sentence she would receive, and that, if her sentence was more severe than she expected, she would have no right to withdraw her plea. (*Id.* at 14-15.) The Court explained that it would take into account the United States Sentencing Guidelines and that, although the guidelines are advisory, it must "at least consider them in determining . . . a fair and reasonable sentence." (*Id.* at 15-16.) Fitzhugh confirmed that she understood

3

and had had an opportunity to discuss the guidelines with her counsel. (*Id.* at 16-17.) The Court then advised Fitzhugh, who was born in the Dominican Republic, that, if she is not a United States citizen, "any sentence in this case or conviction may have immigration consequences for [her]." (*Id.* 19.) Fitzhugh affirmed that she had had an opportunity to discuss those potential consequences with counsel. (*Id.*)

Next, the government summarized the terms of the plea agreement, and Fitzhugh acknowledged that she had reviewed the written plea agreement herself. (*Id.* at 20-24.) Fitzhugh confirmed that no one had promised her anything not contained in the plea agreement or threatened, pressured, forced, or intimidated her to plead guilty. (*Id.* at 26-27.) Fitzhugh affirmed that she was satisfied with the services provided by her attorneys and had had enough time to talk with them about the case and her decision to plead guilty. (*Id.* at 27.) The Court accepted Fitzhugh's plea, finding that it was given knowingly, voluntarily, and intelligently based on the advice of competent counsel. (*Id.* at 28.) Fitzhugh acknowledged that she had signed both the plea agreement and certification section. (*Id.* at 28-29.)

At sentencing, Fitzhugh's counsel successfully argued for a lower actual loss amount than the amount calculated in the presentence investigation report and against a three-level enhancement for Fitzhugh's role in the offense, resulting in a

4

reduced guideline range of forty-six to fifty-seven months.  (Doc. 47 at 9-10, 15-18, 24-28.)  The Court imposed a sentence of twenty-five months of imprisonment.  (*Id.* at 128; Doc. 37.)

Fitzhugh timely filed this §2255 motion, arguing that counsel provided her ineffective assistance by failing to (1) call certain witnesses at sentencing, (2) "unequivocally" advise her that she would be deported if she pled guilty, and (3) move to suppress unspecified evidence and present additional unspecified evidence and legal authority during sentencing.  (Doc. 48 at 5-7, 11-14.)  The government responds that Fitzhugh fails to show either constitutionally deficient performance by counsel or prejudice.  (Doc. 56 at 13-22.)

## II.   Legal Standards

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  "To obtain collateral relief, a [movant] must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).  An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show

5

that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Based on the record before the Court, the undersigned finds that an evidentiary hearing is not required in this case. *See Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (noting that, although prisoner seeking collateral relief is entitled to evidentiary hearing if relief is warranted by facts he alleges, which court must accept as true, hearing is not required if record conclusively demonstrates that no relief is warranted).

To establish ineffective assistance of counsel, a § 2255 movant must show that his counsel's performance was deficient such that it was below objectively reasonable standards, and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). As for the first prong of the test, a court should be "highly deferential" in scrutinizing counsel's performance, *id.* at 689, and "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment," *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). To establish deficient performance, a movant must establish that no competent lawyer would have taken the action that his lawyer took. *Id.* at 1315.

Under the second prong of the test, a court determines whether counsel's challenged acts or omissions prejudiced the movant, i.e., whether "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

A court need not address both prongs of *Strickland*'s test if the movant "makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

### III.   Analysis

#### A.   Failure to Call Certain Witnesses at Sentencing

Fitzhugh claims that counsel should have called Nicole Woods, a counselor Fitzhugh hired as part of the fraudulent scheme, and Jim Martin, Fitzhugh's private investigator, to show that three mothers of minor Medicaid members victimized by the scheme testified falsely at sentencing that their children had received no services from Ms. Woods. (Doc. 48 at 12.)

"[C]ounsel's failure to call certain witnesses is not sufficient grounds for a Sixth Amendment claim." *United States v. Hughes*, 635 F.2d 449, 453 (5th Cir. 1981). "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995); *see also United States v.*

*Long*, 674 F.2d 848, 855 (11th Cir. 1982) ("This Court will not second-guess tactical decisions of counsel in deciding whether to call certain witnesses."). "Counsel is not required to present every nonfrivolous defense; nor is counsel required to present all mitigation evidence, even if the additional mitigation evidence would not have been incompatible with counsel's strategy." *Chandler*, 218 F.3d at 1319. Accordingly, Fitzhugh cannot show that counsel's decision not to call these witnesses amounted to deficient performance.

Furthermore, the record does not support a finding that Fitzhugh would have received a lesser sentence had counsel shown that these witnesses falsely testified that their children received no services. At sentencing, the Court stated that it "believe[d] that" Fitzhugh "thought [she] could perhaps provide other sorts of services to children in after school programs and that they would be positive services." (Doc. 47 at 125.) The Court made clear that Fitzhugh's "ongoing series of misjudgments" in defrauding Medicaid even after she "had been clearly advised it [was] wrong" was a significant factor in the Court's sentence, as weighed against Fitzhugh's "great heart," dedication to children, and years of work as a special education teacher. (*Id.* at 122- 25.) Thus, Fitzhugh's sentence was not based upon whether she provided certain services to the victims but on the Court's weighing

8

of these factors. As such, Fitzhugh fails to show prejudice based on counsel's decision not to call these rebuttal witnesses.

> B. Advice Regarding Immigration Consequences of Guilty Plea

Next, Fitzhugh complains that, although counsel advised her that "there 'may be' or 'could be' some kind of 'immigration consequences' to her plea of guilty, counsel never advised her unequivocally that she 'would be' deported if she pleaded guilty." (Doc. 48 at 12-13.) Fitzhugh maintains that, had counsel done so and "competently pursued a favorable plea agreement, there is a reasonable probability that she would have pleaded guilty with a favorable plea agreement that precluded deportation." (*Id.* at 13.)

To succeed on a claim that a guilty plea was obtained as the result of ineffective assistance of counsel, a § 2255 movant must show that the advice he received from counsel "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 57, 59 (1985) (citations omitted). Counsel is required to provide defendant sufficient information to make an informed and knowing decision to plead guilty, including "all of the information counsel had (and reasonably should have had)" and must offer defendant "reasonable advice" based on that information.

9

*Davidson v. United States*, 138 F. App'x 238, 240 (11th Cir. 2005) (per curiam). When the "deportation consequences" of a guilty plea are "truly clear," defense counsel has a duty to so inform his client. *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010). However, when "the deportation consequences of a particular plea are unclear or uncertain[,] . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* Additionally,

> the representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Defendant has the burden of affirmatively proving prejudice. *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000).

The deportation consequences of Fitzhugh's guilty plea to health care fraud are not "truly clear," as it is not among the offenses specifically enumerated in 8 U.S.C. § 1227(a)(2). Accordingly, counsel only needed to advise Fitzhugh that her guilty plea "may carry a risk of adverse immigration consequences." *Padilla*, 559

10

U.S. at 369. Fitzhugh admits that counsel did so (Doc. 48 at 12-13) and, therefore, has not shown deficient performance by counsel on this ground.

Fitzhugh does not allege that she would have chosen to proceed to trial had she known that she would be deported; instead, she claims that she would have agreed to a plea that "precluded deportation." (Doc 48 at 13.) However, Fitzhugh makes no showing that such a plea was even a possibility and, therefore, has not alleged facts to show that she suffered prejudice.

Additionally, the plea agreement specifically noted "presumptively mandatory" removal for Fitzhugh's offense and clearly stated that Fitzhugh wanted "to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is her automatic removal from the United States." (Doc. 30-1 at 13.) At the plea hearing, Fitzhugh acknowledged that she had signed both the plea agreement and the section certifying that she had carefully reviewed the agreement with counsel and understood its terms. (Doc. 46 at 28-29.) The Court also advised Fitzhugh that her guilty plea and sentence "may have immigration consequences," and Fitzhugh affirmed that she had had an opportunity to discuss those potential consequences with her attorneys, who were able to answer her questions and either advise her of those repercussions or refer her to someone who could. (*Id.* 19-20.) Both the plea agreement and the plea colloquy

11

show that Fitzhugh "received sufficient notice that her offense made her subject to deportation, and thus she cannot show prejudice. A defendant is not at liberty to ignore the documents she signs or the instructions provided by the district court." *Kealy v. United States*, 722 F. App'x 938, 946 (11th Cir. 2018) (per curiam). Therefore, Fitzhugh is not entitled to relief on this ground.

### C. Presentation of Evidence and Argument at Sentencing

Finally, Fitzhugh does not specify what evidence counsel should have moved to suppress or what additional evidence and legal argument counsel should have presented at sentencing. (Doc. 48 at 13.) Fitzhugh's "mere conclusory allegations" are insufficient to demonstrate ineffective assistance of counsel or warrant an evidentiary hearing. *Lynn v. United States*, 365 F.3d 1225, 1238-39 (11th Cir. 2004) (per curiam) (finding that an evidentiary hearing was not required where the defendant's claim was based on "nothing more than mere conclusory allegations"). Therefore, Fitzhugh is not entitled to relief on this ground.

## IV. Certificate of Appealability

A federal prisoner may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability ["COA"] under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). Rule 11 of the

Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotation marks omitted).

A COA is not warranted here because, based on the foregoing discussion of Fitzhugh's grounds for relief, the resolution of the issues presented is not debatable by jurists of reason.

V.     **Conclusion**

For the foregoing reasons, the undersigned **RECOMMENDS** that Fitzhugh's § 2255 motion [48] and a COA be **DENIED** and that civil action number 1:20-CV-0520-AT-LTW be **DISMISSED**.

**SO RECOMMENDED**, this   15   day of      May      , 2020.

_____
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE